MCNUTT LAW GROUP LLP
SCOTT H. MCNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
THOMAS B. RUPP (CSBN 278041)
219 9th Street
San Francisco, California 94103
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Attorneys for DEBTOR

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>DEERFIELD RANCH WINERY, LLC,<br><br>Debtor. | Case No. 15-10150-AJ<br><br>Chapter 11<br><br>**MOTION FOR ORDER EXTENDING TIME IN WHICH ONLY THE DEBTOR MAY FILE A PLAN**<br><br>Judge: Hon. Alan Jaroslovsky<br>Date: July 10, 2015<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>99 South "E" Street<br>Santa Rosa, CA 95404 |

Deerfield Ranch Winery, LLC, the debtor and debtor-in-possession in the above captioned Chapter 11 reorganization case ("Deerfield" or the "Debtor"), hereby moves for an order extending the time in which the Debtor has the exclusive right to file a plan of reorganization pursuant to 11 U.S.C. § 1121(d) (the "Motion").

Deerfield seeks only a brief, sixty-day extension of exclusivity, in order to pursue negotiations with its secured creditor, Rabobank N.A. ("Rabobank"), and the creditors committee regarding plan terms. Deerfield intends to pursue a consensual plan in the first instance, and therefore wishes to enter into negotiations with the key parties prior to filing its plan. By this Motion, Deerfield simply seeks a brief extension of the exclusivity period to allow for negotiations

without the potential interference of competing plans. Deerfield believes that under the present circumstances, this is a straightforward request that is unlikely to be the subject of dispute. Nevertheless, it is appropriate for Deerfield's exclusivity to be preserved while it negotiates with the major creditor parties.

This Motion is based on the memorandum of points and authorities set forth herein, the DECLARATION OF SHANE J. MOSES IN SUPPORT OF MOTION FOR ORDER EXTENDING TIME IN WHICH ONLY THE DEBTOR MAY FILE A PLAN, (the "Moses Declaration") filed concurrently herewith, the pleadings and papers on file herein, and upon such additional evidence as may presented at the hearing on this Motion.

## I. JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C §§ 157(b)(2)(A), (L), and (O). Authority for the relief requested exists pursuant to 11 U.S.C. §§ 105 and 1121.

## II. FACTS

### A. Background of Deerfield

Deerfield Ranch Winery is an award-winning winery located in the heart of the Sonoma Valley, founded by Robert and PJ Rex. Specializing in blended wines, Deerfield's winemakers carefully craft some 20 different wines in small lots from specially selected Sonoma vineyards. Annual production totals approximately 30,000 cases annually, including both Deerfield brands and the winery's substantial custom-crush business, which includes approximately 12 small family-owned wineries. Although issues with Deerfield's secured lender have necessitated this filing, the winery operations are strong, profitable, and growing.

The Deerfield estate is approximately 47 acres, located in Kenwood, California, and was acquired in 2000. Approximately 7 acres are planted in biodynamically farmed vineyards. After Deerfield purchased the property, it constructed a 23,000 square foot wine cave with a capacity for 2,500 barrels and a grand tasting room in the center, as well as a state of the art production facility.

A fuller presentation of Deerfield's background, the circumstances which led to the instant Chapter 11 filing, and Deerfield's expectations regarding its reorganization is set forth in the DECLARATION OF ROBERT REX IN SUPPORT OF FIRST DAY MOTIONS [Docket No. 7], filed on February 13, 2015, which is incorporated herein by reference.

### B. Deerfield's Current Operations

Deerfield is a highly respected, profitable business with a very high likelihood of a successful reorganization, despite its troubles with the Rabobank loans. After opening to the public in 2008, the winery business has grown steadily, even while being hampered by the banking relationship. Deerfield was profitable in 2012 and 2013, even after debt service, including the substantial annual payments made that were required by Rabobank. Net profit was $100,000 on $3.1 million in revenue in 2012, and $125,000 on $3.4 million in 2013. During these past three years EBITDA has been $972,000 in 2012, $1.2 million in 2013, and $752,000 in 2014. Even with the debt service and the punishing additional expenses associated with being assigned to Special Assets, Deerfield has had a positive bottom line. Net profit in 2014 was $59,600. Without the extraordinary costs associated with the foreclosure action and receivership in 2014, adjusted EBITDA was $852,000 and adjusted net profit was $159,600.

Pre-petition, Deerfield continued to pay its vendors in the ordinary course of business, in spite of its struggles with Rabobank. As a result, Deerfield's unsecured debt is only the routine accounts that are to be expected for a winery at this point in the year, as well as few longer-term loans from other parties. Deerfield's only other secured debt is a Sonoma County property tax lien, resulting from Deerfield being forced to use cash intended for payment of property taxes to fund large principal payments to Rabobank.

### C. Intended Reorganization

Deerfield believes that any attempt sell the business in the immediate term would result in depressed offers that do not reflect the actual value of the business. Therefore, it is probable that a reorganization process is more likely to protect the rights of all of Deerfield's creditors *and* equity holders. Deerfield therefore expects to promptly propose a plan of reorganization, which restructures its debt so that it can operate successfully for a period of several years. Within that

time, the company would expect to refinance the debt. The plan of reorganization will most likely contemplate extending the Rabobank debt for a period of time, at a reasonable interest rate that is fair to both the bank and other creditors/ equity holders. Reorganization of the Rabobank loans into a long-term, fully amortized note or notes is also a possibility. In either case, Deerfield expects that it will be able to propose a plan that pays unsecured creditors in full, over a modest period of time, allowing equity to remain in place.

Before Deerfield could reasonably enter into meaningful negotiations with Rabobank or the Committee, it was necessary to prepare thorough, transparent financial models reflecting expected revenues and expenses over the next seven years. This was a detailed and time consuming task, but it has now been completed, and the Debtor has prepared its draft plan based on those numbers. Rather than filing and seeking approval of its plan without creditor input, Deerfield intends to engage in a dialog with Rabobank and the Committee regarding the terms of its proposed plan, to determine whether filing an consensual plan is possible.

### III. SUMMARY OF RELIEF SOUGHT

Through this Motion, Deerfield Ranch seeks an extension, pursuant to § 1121(d), of the time periods within which it has the exclusive right to file and seek authorization of a plan of reorganization. Debtor seeks an extension of the 120-day exclusivity period of § 1121(b) to August 28, 2015, and an extension of the 180-day exclusivity period of § 1121(c) to October 30, 2015. This coincides with the deadline for plan confirmation set by this Court.

### IV. LEGAL AUTHORITY

**A.  11 U.S.C. § 1121(d) Permits This Court To Extend Debtor's Exclusivity Period**

The Court has discretion to extend the time in which Deerfield Ranch has the exclusive right to seek acceptance of a plan. The Bankruptcy Code provides a debtor-in-possession with the initial exclusive right to file a plan, and further provides for that exclusive right to be extended by the Court, for cause. 11 U.S.C. § 1121.

/ / /

/ / /

/ / /

Only the debtor may file a plan until 120 days after the date of the petition. 11 U.S.C. § 1121(b). If the debtor files a plan within 120 days, the debtor's right to exclusivity continues to 180 days after the petition, in order to allow the debtor time to seek acceptance and confirmation of its proposed plan. 11 U.S.C. § 1121(c)(3).

These 120-day and 180-day periods may be extended on the request of any party in interest. 11 U.S.C. § 1121(d). The operative portion of § 1121(d) reads: ". . . on request of a party in interest made within the respective periods specified . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).

Although § 1121 provides that the exclusivity period may be extended "for cause," the Bankruptcy Code does not define "cause" or provide any specific standard. The legislative history of § 1121(d), however, reflects a Congressional intent to allow a debtor to remain in control of the bankruptcy process, while recognizing the legitimate interest of creditors in the debtor's case. *See* H.R. Rep. No. 95-595, 406 (1977); S. Rep. No. 95-989, 118 (1978).

The Courts have further interpreted the "cause" standard of § 1121(d) as a broad standard that allows the Court "maximum flexibility to suit various types of reorganization proceedings." In re Public Service Co. of New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988); *see* Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("[t]he hallmark of [§ 1121(d)] is flexibility"). The courts have highlighted numerous factors that can be considered in evaluating whether to extend the exclusivity period. These include: (1) the size and complexity of the case; (2) the amount of time that has elapsed in the case; (3) the existence of good faith progress; (4) whether the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects of filing a viable plan; (6) the necessity of sufficient time for the debtor to negotiate a plan; (7) whether the debtor has made progress in negotiation with its creditors; (8) whether the debtor is seeking an extension in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists. In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *see also* In re Express One International, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). The Ninth Circuit Bankruptcy

Appellate Panel has held that the one "transcendent" consideration is whether an extension of the exclusivity period will facilitate moving the case forward, and toward a fair and equitable resolution. In re Henry Mayo Newhall Memorial Hosp., 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002).

**B.     The Requested Relief Falls Within the Statutory Time Limits**

The Bankruptcy Code limits extensions of the exclusivity period to 18 months from the petition date for the 120-day period, and 20 months for the 180-day period. See 11 U.S.C. § 1121(d)(2). The modest extensions sought herein are not remotely near these limits, which are still more than a year out.

Deerfield filed its petition on February 13, 2015. Unless modified by the Court, Deerfield's 120-day exclusivity period therefore expires on June 13, 2015, which is a Saturday, so the deadline is June 15, 2015. Unless modified by the Court, Deerfield Ranch's 180-day exclusivity period therefore expires on August 12, 2015, which is a Saturday, so the deadline is August 14, 2015.

**C.     Good Cause Exists To Extend the Debtor's Exclusivity Period**

An evaluation of the factors identified above clearly shows that cause exists for extension of the exclusivity period.

**1.     Size and Complexity of the Case**

Deerfield acknowledges that this is not a particularly large or complex case. Nevertheless, it has sufficient complexities that the modest increase in exclusivity requested herein is reasonable.

**2.     Amount of Time Elapsed in the Case**

Fewer than four months have elapsed since Deerfield filed its voluntary petition. This is Deerfield's first request for an extension of exclusivity. The requested relief would extend exclusivity periods to August 28, 2015, and October 30, 2015, approximately six and eight months from the petition date. This is approximately one-third of the maximum limit on exclusivity provided by the Bankruptcy Code. *See* 11 U.S.C. § 1121(d)(2)(B) and § 1121(d)(2)(B) (18 and 20- month maximums). This factor therefore strongly supports the requested extension.

### 3. Existence of Good Faith Progress

Deerfield has made good faith progress in the case to date. In large part, this involved preparing the detailed financial projections necessary to support its plan. While this was a time consuming task, it has been completed, and Deerfield now has the long-term projections necessary to have a meaningful dialog with Rabobank and the Committee. Based on these projections, Deerfield has prepared a draft plan, which it intends to circulate to the Committee's and Rabobank's counsel. It is appropriate for the Court to extend exclusivity so that this dialog can lead to the submission of a consensual plan of reorganization, if possible.

Deerfield has also successfully negotiated multiple cash collateral stipulations with Rabobank, and has made regular adequate protection payments. At the same time, Deerfield has continued to successfully operate its business and generate positive operating revenues.

Finally, Deerfield has consistently lived within its cash budget, and has filed complete and detailed monthly operating reports in a timely fashion.

### 4. The Debtor Is Paying Its Post-Petition Bills as They Become Due

Deerfield is consistently paying its post-petition bills as they come due, and is living well within its cash budget. Deerfield also remains current with its fees to the United States Trustee. Further, Deerfield is paying adequate protection payments to its secured lender in an amount equal to the contract interest under the secured loans. There is no question that this factor supports extension of exclusivity.

### 5. The Debtor Has Demonstrated Reasonable Prospects of Filing a Viable Plan

There should be no question as to Deerfield's ability to propose a viable plan. As set forth in Deerfield's monthly operating reports, the Debtor has substantial positive cash flows, which should be sufficient to service its secured debt and to pay all other creditors in full over time. This will preserve some value for Deerfield's many equity holders. The monthly operating reports demonstrate that Deerfield has reasonable prospects of filing a viable plan. *See* In re Express One, 194 B.R. at 100 (factor is whether there is reasonable prospect of filing viable plan).

### 6. The Necessity of Sufficient Time for the Debtor to Negotiate a Plan

Deerfield seeks additional time to enter into negotiations with Rabobank and the Committee to seek agreement on terms for a consensual plan. While Deerfield is in a position to file a plan and disclosure statement at this point, it is seeking an extension of exclusivity so that it can pursue negotiations toward a consensual plan before filing its plan and disclosure statement with the Court. Deerfield believes pursuing a negotiated solution from the beginning is clearly in the best interests of creditors, because it could potentially allow avoidance of the substantial administrative costs that would come with a contested plan.

### 7. The Debtor Has Made Progress in Negotiations with Its Creditors

While Deerfield has not yet entered into substantive negotiations regarding plan terms, it has made substantial progress in laying the groundwork to do so. As described above, before Deerfield could engage in meaningful negotiations with its secured lender and other creditors, it was first necessary to prepare reliable long-term forecasts. This task is now complete, and Deerfield is in a position to move forward with negotiations. Given that this is a first request for a modest extension of exclusivity, Deerfield believes that this is substantial step toward negotiating a plan, and that this supports extension of exclusivity. *See* In re Dow Corning Corp., 208 B.R. at 665.

### 8. The Debtor Is Not Seeking an Extension In Order To Pressure Creditors

There cannot be any reasonable contention that the extension is for the purpose of pressuring creditors. Deerfield merely seeks an extension so that it can enter into good faith negotiations with its creditors, father than moving forward with a potentially contested plan.

### 9. There Are No Unresolved Contingencies

Generally speaking, the types of unresolved contingencies in question are those which are external to the case. *See* In re Dow Corning Corp., 208 B.R. at 665. Deerfield is not aware of any such external contingencies.

### D. The Requested Extension Will Facilitate Moving the Case Forward

The factors discussed above are all related to the "transcendent consideration" of whether extending Deerfield's exclusivity will facilitate moving the case forward toward a fair and

equitable resolution.  *See* <u>In re Henry Mayo</u>, 282 B.R. at 453.  This is not a case where the debtor has dragged its feet or failed to make meaningful progress.  The purpose of the relief requested is simply to allow Deerfield reasonable time to negotiate with its secured creditor and the Committee, while protected from the interference of competing plans as contemplated by the Bankruptcy Code.  *See* <u>In re Homestead Partners, Ltd.</u>, 197 B.R. 706, 719 (Bankr. N.D. Ga., 1996) ("[t]he debtor's exclusive opportunity at plan formulation is a key element in the delicate balance struck by Congress to encourage the consensual development of reorganization plans.").

A key part of moving the case forward is allowing the debtor adequate time to negotiate with creditors regarding a consensual plan.  As the Second Circuit has stated: "In enacting the 1978 Code Congress . . . clearly indicated as one of its purposes that equity interests have a greater voice in reorganization plans-hence, the safeguards of disclosure, voting, acceptance and confirmation in present Chapter 11."  *See* <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1071 (2d Cir. 1983).  Deerfield does not believe that it is productive or appropriate for other parties to file competing plans before it has had a reasonable opportunity to negotiate with its creditors.

Deerfield here seeks to negotiate with the Committee and its secured creditor on the terms of its proposed plan, in order to minimize administrative costs for the estate.  To the extent it is possible to reach agreement on consensual plan terms with Rabobank and the Committee, this is clearly in the best interests of all creditors and equity holders.  Although it is possible that a contested confirmation may be necessary, the time and costs involved clearly favor attempting to reach a negotiated solution.

By this Motion, Deerfield merely seeks to preserve its exclusivity for a period of two months, in order to conduct these negotiations.  There is every reason to believe that allowing this brief period of extended exclusivity for negotiation among the major parties, without the possible distraction of competing plans, will move the case forward.  The requested extension of exclusivity is therefore clearly consistent with the purpose of Section 1121.  *See* <u>In re Lionel Corp.</u>, 722 F.2d at 1071; <u>Homestead Partners, Ltd.</u>, 197 B.R. at 719.

## V. CONCLUSION

WHEREFORE, Deerfield respectfully requests entry of an Order:

1. Granting this Motion;

2. Extending to August 28, 2015, the time during which the Debtor has the exclusive right to file a plan, pursuant to 11 U.S.C. § 1121(b).

3. Extending to October 30, 2015, the time during which the Debtor has the exclusive right to file a plan, pursuant to 11 U.S.C. § 1121(c); and

4. For such other relief as the Court finds just and proper.

DATED: June 12, 2015                McNUTT LAW GROUP LLP


By:      /s/ *Shane J. Moses*
         Shane J. Moses
         Attorneys for DEBTOR