# Exhibit A

McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
THOMAS B. RUPP (CSBN 278041)
219 9th Street
San Francisco, California 94103
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Attorneys for DEBTOR

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No. 15-10150-AJ |
| DEERFIELD RANCH WINERY, LLC, | Chapter 11 |
| Debtor. | Judge:   Hon. Alan Jaroslovsky |

**AMENDED PLAN OF REORGANIZATION**

*Dated ~~November 10, 2015~~February 22, 2016*

# TABLE OF CONTENTS

INTRODUCTION      1

ARTICLE I DEFINITION AND CONSTRUCTION OF TERMS ................................................. 1

    1.1.    Definitions. ........................................................................................................ 1

ARTICLE II DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ......................... 8

    2.1.    Claims Provided For Herein. ............................................................................. 8

    2.2.    Limitation on Inclusion in a Class. .................................................................... 8

    2.3.    Non-Classified Claims. ...................................................................................... 9

    2.4.    Classification of Claims and Interests. .............................................................. 9

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS ................................................. 10

    3.1.    Non-Classified Claims. .................................................................................... 10

    3.2.    Classified Claims and Interests. ...................................................................... 11

ARTICLE IV EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................. 20

    4.1.    Assumption of Unexpired Leases and Executory Contracts. ........................... 20

    4.2.    Rejection of Contracts Not Expressly Assumed. ............................................. 20

ARTICLE V OTHER MATTERS REGARDING CLAIMS ..................................................... 21

    5.1.    Single Claim. .................................................................................................... 21

    5.2.    Unclaimed Distributions. ................................................................................. 21

    5.3.    Objections to Claims. ....................................................................................... 21

    5.4.    Treatment of Disputed Claims. ........................................................................ 22

    5.5.    Late-Filed Claims. ........................................................................................... 22

    5.6.    No Distribution to Disallowed Claims. ............................................................ 22

    5.7.    Prepayment. ...................................................................................................... 22

    5.8.    Co-Obligor Claims. .......................................................................................... 22

ARTICLE VI MEANS FOR IMPLEMENTING THE PLAN ................................................... 24

    6.1.    Plan Effectiveness. ........................................................................................... 24

    6.2.    Revesting. ......................................................................................................... 25

| | | |
|---|---|---|
| 6.3. | Sale or Refinance. | 25 |
| 6.4. | Preservation of Causes of Action. | 25 |
| 6.5. | Use of Funds. | 26 |
| 6.6. | De Minimis Distributions. | 26 |
| 6.7. | Bankruptcy Procedure and Transition. | 27 |
| 6.8. | Corporate Operations and Management. | 28 |
| 6.9. | Other Actions. | 29 |
| 6.10. | Survival of Legal Claims. | 29 |
| ARTICLE VII EFFECT OF CONFIRMATION | | 30 |
| 7.1. | Binding Effect of Confirmation. | 30 |
| 7.2. | Discharge of Claims and Termination of Interests. | 30 |
| 7.3. | Injunction. | 31 |
| 7.4. | Ratification. | 31 |
| ARTICLE VIII MISCELLANEOUS PROVISIONS | | 31 |
| 8.1. | Exemption from Certain Transfer Taxes and Recording Fees. | 31 |
| 8.2. | Grace Period. | 31 |
| 8.3. | Governing Law. | 31 |
| 8.4. | Integration. | 32 |
| 8.5. | Section Headings. | 32 |
| 8.6. | Severability. | 32 |
| ARTICLE IX RETENTION OF JURISDICTION | | 32 |
| 9.1. | Retention of Jurisdiction. | 32 |
| 9.2. | No New Case. | 33 |
| ARTICLE X MODIFICATION OF THE PLAN | | 33 |
| 10.1. | Modification. | 33 |
| 10.2. | Correction of Defects. | 34 |
| ARTICLE XI REQUEST FOR CONFIRMATION | | 34 |
| 11.1. | Confirmation Pursuant to § 1129(b) | 34 |

# INTRODUCTION

Deerfield Ranch Winery, LLC, the debtor and debtor-in-possession in the above captioned Chapter 11 reorganization case, hereby proposes this Plan of Reorganization (as amended, modified or supplemented from time to time, this "Plan"), pursuant to 11 U.S.C. § 1121. The Debtor is the proponent of this Plan within the meaning of § 1129 of the Bankruptcy Code. [1]

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 13, 2015, thereby commencing the Case. The Disclosure Statement filed concurrently herewith provides a description of the Debtor's history and business, financial results, projections, and a summary of the Plan. There also are other agreements and documents that are or will be filed (as part of the Supplemental Plan Documents, defined below, or otherwise) and are referenced in the Plan or the Disclosure Statement or both.

Pursuant to § 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from holders of Claims and Interests until the Disclosure Statement has been approved by the Court. The Debtor urges the holders of all Claims and Interests entitled to vote on the Plan to read the Plan and Disclosure Statement, all exhibits thereto, and any supplemental documents filed with the Court, before voting to accept or reject the Plan. To the extent that the Disclosure Statement is inconsistent with the Plan, the Plan will govern. The Debtor expressly reserves the right to alter, amend, modify, revoke, or withdraw the Plan as set forth in § 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Article 10.

## ARTICLE I
## DEFINITION AND CONSTRUCTION OF TERMS

1.1. **_Definitions._** The following Definitions apply in this Plan:

1.1.1 "Administrative Expense Claims" means those Claims described in Section 2.3.1 below.

---

[1] Capitalized terms have the definitions provided in Article I below, or elsewhere in this Plan.

00057089-1                                   1          AMENDED PLAN OF REORGANIZATION

1         1.1.2   "Allowed," with respect to a Claim, means an unpaid Claim against the

2 Debtor (i) proof of which was timely filed with the Court and as to which no objection is filed; (ii)

3 which was listed in Debtor's schedules of assets and liabilities filed in the Case, as they may be

4 amended from time to time through the Confirmation Date, and (A) was not listed as disputed,

5 contingent or unliquidated and (B) as to which no objection has been filed; or (iii) which has been

6 Allowed by a Final Order of the Court.

7         1.1.3   "Allowed Secured Claim" means a Claim in Class 1A, Class 1B, or Class

8 1C, as described in Section 2.4, that is Allowed.

9         1.1.4   "Ballot" means each of the ballot forms that are distributed with the Plan

10 and Disclosure Statement to holders of Claims and Interests included in Voting Classes.

11         1.1.5   "Bankruptcy Code" means title 11 of the United States Code, as in effect on

12 the Petition Date and as thereafter amended, if such amendments are made applicable to the Case.

13         1.1.6   "Bankruptcy Court" or "Court" means the United States Bankruptcy Court

14 for the Northern District of California, or the United States District Court for the Northern District

15 of California, as the context requires.

16         1.1.7   "Bankruptcy Rules" means, collectively and as the context requires, the

17 Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as in effect on the

18 Petition Date and as thereafter amended, if such amendments are made applicable to the Case, the

19 Federal Rules of Civil Procedure, as applicable to the Case or proceedings therein, and the Local

20 Rules of the Court, as applied to the Case or proceedings therein.

21         1.1.8   "Case" means the Debtor's Chapter 11 case, No 15 -10150, before the

22 Bankruptcy Court.

23         1.1.9   "Cause of Action" means any and all claims and causes of action which

24 might be asserted by the Debtor or the Reorganized Debtor, including as debtor-in-possession.

25         1.1.10  "Claim" means any right to payment from the Debtor, whether or not such

26 right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

27 disputed, undisputed, legal, equitable, secured or unsecured, or any right or equitable remedy for

28 breach of performance if such breach gives rise to a right to payment, whether or not such right to

an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.  For the avoidance of doubt, the term "Claim" shall be given the broadest meaning given to that term under the Bankruptcy Code.

1.1.11  "Claims Bar Date" means the later of (i) June 18, 2015; (ii) 30 days after the claimant received notice of the Case; or (iii) 30 days after a lease or executory contract is rejected, unless the Court determines that, under the circumstances, the law requires the application of a later date to the subject Claim.  For a governmental unit only, the "Claims Bar Date" shall mean 180 days after the order for relief.

1.1.12  "Class" means a category of Claims or Interests designated pursuant to the Plan.

1.1.13  "Class-A Units" means those membership Interests in the Debtor described in Section 2.4.7, below.

1.1.14  "Confirmation" means the entry of a Confirmation Order by the Bankruptcy Court.

1.1.15  "Confirmation Date" means the date on which a Confirmation Order is entered by the Bankruptcy Court.

1.1.16  "Confirmation Order" means the order of the Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.1.17  "Co-Obligor" means any Person other than the Debtor that might be held liable on a Co-Obligor Claim, including an affiliate of the Debtor or an equity holder, officer, director, employee or agent of the Debtor.

1.1.18  "Co-Obligor Claim" means a claim or cause of action against a Co-Obligor to the extent that such claim or cause of action was or could have been asserted against the Debtor on any theory or basis including claims and causes of action under guarantees.

1.1.19  "Creditor" means any Person that has a Claim against the Debtor.

1.1.20  "Creditors Committee" means the official committee of unsecured Creditors appointed in the Case.

1.1.21  "Debtor" means Deerfield Ranch Winery, LLC.

1.1.22 "Disallowed Claim" means any Claim (i) proof of which was required to be filed by the Bankruptcy Code or an order of the Court but as to which no proof of Claim or request for payment was timely or properly filed before the applicable Claims Bar Date, (ii) which has been voluntarily withdrawn by the holder thereof, (iii) deemed not allowable against the assets of the Debtor or Estate by an order of a court of competent jurisdiction or by stipulation of the Claim holder and any party objecting to the Claim, or (iv) which the Debtor listed on its schedules of liabilities as a disputed, contingent, or unliquidated Claim and for which the Claim holder did not file a proof of claim prior to the Claims Bar Date. If a Claim is disallowed in part, the remainder of the Claim will be, as applicable, an Allowed Claim or a Disputed Claim.

1.1.23 "Disputed Claim" means a Claim which falls into one of the following categories: (i) a Claim listed by the Debtor in its schedule of liabilities or for which a proof of claim has been filed, as to which an objection has been filed and which objection has not either been withdrawn or determined by a Final Order; or (ii) a Claim listed by the Debtor in its schedule of liabilities as being disputed, contingent, or unliquidated, and as to which a proof of Claim has not been filed.

1.1.24 "Discharged Claim" means a Claim that is discharged pursuant to this Plan.

1.1.25 "Effective Date" means a date selected by the Debtor which is not later than 30 days after the Confirmation Order becomes a Final Order. To the extent practicable, the Effective Date shall occur no later than December 31, 2015.

1.1.26 "Estate" means the estate created by the commencement of the Case pursuant to § 541 of the Bankruptcy Code or the reopening of the Case.

1.1.27 "Estate Assets" means, if a Plan Administrator is appointed by the Plan Administrator Order, all assets of the Estate and the Reorganized Debtor, as the case may be, existing on or after entry of the Plan Administrator Order, including all Causes of Action.

1.1.27 1.1.28 "Existing Credit Documents" means any and all documents existing as of the Petition Date and evidencing the indebtedness of the Debtor to Rabobank or related companies, or any security interests securing such indebtedness.

1.1.28 1.1.29 "Final Decree" means an order of the Court closing the Case.

1.1.29 1.1.30    "Final Order" means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket in the Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause such order not to be a Final Order.

1.1.30 1.1.31    "Guarantors" shall mean the guarantors under the Existing Credit Documents, including Robert Rex and Paulette J. Rex, in both their individual and trustee capacities.

1.1.31 1.1.32    "Interest" means the legal, equitable, contractual and other rights of the holders of equity interests in the Debtor, represented by any limited liability company membership interests or other equity interests evidencing a present ownership interest in the Debtor prior to the Effective Date, whether or not transferable, together with all rights pertinent thereto, as provided in the Operating Agreement.

1.1.32 1.1.33    "LIBOR" shall mean the 1-month LIBOR (London Interbank Offered Rate), as more particularly provided in the New Credit Documents, or any substitute rate for LIBOR as provided therein.

1.1.33  "Liquidating Trust Agreement" means the documents so designated and attached as exhibits to the "Supplemental Plan Documents" filed herein.

1.1.34  "Liquidating Trustee" means a liquidating trustee appointed pursuant to the terms of Section 3.2.2.2 below and the Liquidating Trust Agreement.

1    ~~1.1.35~~1.1.34    "Managing Members" shall be the managing members of the Debtor

2    as provided in the Operating Agreement.

3    ~~1.1.36~~1.1.35    "New Credit Documents" has the meaning provided in Section

4    3.2.2.1, and shall include the documents so designated and attached as exhibits to the

5    "Supplemental Plan Documents" filed herein.

6    ~~1.1.37~~1.1.36    "New Note" means the document so designated and attached as an

7    exhibit to the "Supplemental Plan Documents" filed herein.  The New Credit Documents shall

8    include the New Note.

9    ~~1.1.38~~1.1.37    "Operating Agreement" means the Debtor's OPERATING

10   AGREEMENT FOR DEERFIELD RANCH WINERY LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,

11   including all amendments thereto.

12   ~~1.1.39~~1.1.38    "Person" shall mean an individual, partnership, corporation, trust,

13   unincorporated association, or other entity or association.

14   ~~1.1.40~~1.1.39    "Petition Date" means February 13, 2015, the date on which the

15   Debtor filed its petition for relief in the Court commencing this Case.

16   ~~1.1.41~~1.1.40    "Plan" means this Chapter 11 plan of reorganization, as it may be

17   amended or modified.

18   1.1.41  "Plan Administrator" means a plan administrator for liquidation of the

19   Estate Assets, appointed pursuant to the terms of Section 3.2.2.4 below and subject to the terms of

20   the Plan Administrator Provisions.

21   1.1.42  "Plan Administrator Order" means an order for appointment of a Plan

22   Administrator pursuant to the terms of Section 3.2.2.4.

23   1.1.43  "Plan Administrator Provisions" means the document so designated and

24   attached as an exhibit to the "Supplemental Plan Documents" filed herein.  The Plan

25   Administrator Provisions are incorporated herein by reference as if fully set forth herein, provided

26   that such Plan Administrator Provisions are effective only on entry of a Plan Administrator Order.

27   ~~1.1.42~~1.1.44    "Rabobank" means Rabobank, N.A., the Debtor's principal secured

28   lender, which is the holder of the Class 1B Claim, and includes its related companies, all as

provided in the Existing Credit Documents and the New Credit Documents.

1.1.43 1.1.45   "Real Property" means, collectively, the real property located in Sonoma County, California and owned by the Debtor commonly known as "Deerfield Ranch Winery", 10200 Sonoma Highway (Highway 12), Kenwood (unincorporated part of county), Sonoma County, California, APNs 050-240-021, -032, and -033, and 050-250-035, as more particularly described in the Existing Credit Documents, together with all rights appurtenant thereto, and all fixtures attached thereto.

1.1.44 1.1.46   "Related" means, with respect to a Co-Obligor Claim, the associated Claim that was or could have been asserted against the Debtor on any theory or basis.

1.1.45 1.1.47   "Reorganized Debtor" means the Debtor, on and after the Effective Date.

1.1.46 1.1.48   "Restructured Credit Documents" means, collectively, (i) the New Credit Documents; and (ii) the Existing Credit Documents, as amended, modified, or supplemented by the New Credit Documents, to the extent that the Existing Credit Documents remain in effect pursuant to the New Credit Documents.

1.1.47 1.1.49   "Retained Professional" means each of the attorneys, accountants, financial advisors and other professionals retained by the Debtor or, the Creditors Committee, or the Plan Administrator whose employment has been approved by the Court.

1.1.48 1.1.50   "Secured Claim" means a Claim secured by a lien on any property of the Estate, to the extent of the value of the interest of the holder of such Claim in the Estate's interest in such property.

1.1.49 1.1.51   "Suspension Period" has the meaning given that term in Section 5.8 below.

1.1.50 1.1.52   "Supplemental Plan Documents" means the compilation of documents and forms of documents, schedules and exhibits, including the New Credit Documents, as they may thereafter be altered, amended, modified, or supplemented in accordance with the terms of this Plan, and after the Effective Date as they may be altered, amended, modified, or supplemented in accordance with their terms.

7                   AMENDED PLAN OF REORGANIZATION

1.1.51 1.1.53  "Units" means those membership Interests in the Debtor described in Section 2.4.8, below, and so defined in the Operating Agreements.

1.1.52 1.1.54  "Unsecured Claim" means a Claim to the extent that it is not a Secured Claim.

1.1.53 1.1.55  "Unsecured Interest Rate" means 3% simple interest.

1.1.54 1.1.56  "US Trustee" means the Office of the United States Trustee.

1.1.55 1.1.57  "Voting Classes" means Class 1A, Class 1B, Class 1C, Class 3A, Class 3B, and Class 4A, as defined in Section 3.2, below.

1.2     The singular of any of the foregoing definitions includes the plural and vice versa where the context so requires, "includes" and "including" are not limiting, "may not" is prohibitive and not permissive, and "or" is not exclusive.

1.3     A term used in the Plan, whether or not capitalized, that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to the term in the Bankruptcy Code or Bankruptcy Rules, as applicable.

## ARTICLE II
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

2.1.    ***Claims Provided For Herein.***  Various types of Claims and Interests are defined or described in this Plan.  This Plan is intended to deal with all Claims and Interests against or in the Debtor or property of the Debtor or the Estate of whatever character, whether or not with recourse, whether or not contingent or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 502, which arise in any manner or from any event or circumstance.  However, only those Claims Allowed pursuant to Bankruptcy Code § 502 will receive any distribution under this Plan.  All Claims will be discharged without any distribution, recovery, recourse, or residual interest or right to the extent not expressly included in any Class or otherwise provided any treatment hereunder.

2.2.    ***Limitation on Inclusion in a Class.***  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent the Claim qualifies within the

description of that Class. A Claim shall be included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

2.3. ***Non-Classified Claims.*** The following Claims shall <u>not</u> be classified hereunder but shall be entitled to the treatment set forth in Section 3.1:

2.3.1 All administrative expenses and any other Claims that may be Allowed pursuant to § 503(b) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) or § 507(a)(3) of the Bankruptcy Code (except such Claims for US Trustee quarterly fees as are described in Section 2.3.3 herein). The Administrative Expense Claims will include the allowed unpaid compensation of Estate professionals for fees and expenses incurred prior to the Confirmation Date;

2.3.2 All Allowed Claims of governmental units based on any demand for payment of a tax entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code, including all allowable interest and penalties thereon that are entitled to priority ("Priority Tax Claims"), but expressly excluding the Secured Claims of the County of Sonoma which are treated under Class 1A herein; and,

2.3.3 Any fees payable to the US Trustee entitled to treatment pursuant to § 1129(a)(12) of the Bankruptcy Code.

2.4. ***Classification of Claims and Interests.*** Allowed Claims not described in Section 2.3 hereof are classified as follows:

2.4.1 *Class 1A (Sonoma County Secured Claims)*: Class 1A shall consist of the Allowed Secured Claims of the County of Sonoma for real property taxes, assessments, and other amounts included in real property taxes with respect to the Real Property that were delinquent or defaulted on the Petition Date, together with all penalties and accrued and accruing interest in respect thereof, which are secured by tax liens encumbering the Real Property.

2.4.2 *Class 1B (Rabobank Secured Claim)*: Class 1B shall consist of the Allowed Secured Claim of Rabobank, which shall be in the amount of $11,750,000, which amount shall be inclusive of all amounts to which Rabobank is entitled to under the Existing Credit Documents, including attorneys' fees, other fees, costs, and interest.

2.4.3  *Class 1C (Secured Claims)*: Class 1C shall consist of every Allowed Secured Claim, other than those classified in Class 1A or 1B.  Class 1C includes but is not limited to the claims of grape growers who are secured by California statutory liens, or by replacement liens provided by prior order of the Court.

2.4.4  *Class 2 (Priority Claims)*: Class 2 shall consist of all Allowed Claims entitled to priority under § 507 of the Bankruptcy Code, other than those described in Section 2.3, above.

2.4.5  *Class 3A (General Unsecured Claims)*: Class 3A shall consist of all Allowed Unsecured Claims, other than (i) Claims included in Class 2, (ii) Claims described in Section 2.3, above, and (iii) Claims described in Section 2.4.6, below.

2.4.6  *Class 3B (Management Unsecured Claims)*: Class 3B shall consist of the Allowed Unsecured Claims of the Managing Members for repayment of operating loans made by the Managing Members to the Debtor, in the amount of approximately $442,758.40, as reflected on the Debtor's Schedule F Amended.

2.4.7  *Class 4A (Defined Return Equity)*: Class 4A shall consist of those equity Interests in the Debtor which are described as "Class-A Units" in the Operating Agreement, and have those characteristics described in Section 3.3.4 of the Operating Agreement, including all accrued deferred payments to the holders of such equity Interests accrued pursuant to the Operating Agreement.

2.4.8  *Class 4B (Equity)*: Class 4B shall consist of all equity Interests in the Debtor other than those classified in Class 4A, which are the membership "Units" as defined in the Operating Agreement, and all options to purchase "Units" as provided under the Operating Agreement.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1.  **Non-Classified Claims.**  The non-classified Claims described in Section 2.3 hereof shall be treated as follows:

3.1.1  With respect to a Claim described in Section 2.3.1, to the extent that the

14    AMENDED PLAN OF REORGANIZATION

holder of such Claim has not previously been paid, the holder shall receive from the Reorganized Debtor on account of such Claim cash equal to the allowed amount of such Claim on or as soon as practicable after the later of the Effective Date or the date the Claim becomes an Allowed Claim. In the case of Retained Professionals, such Claims shall be paid on a final basis as soon as practicable after the Court has entered an order approving their final fee applications.

3.1.2    With respect to a Claim described in Section 2.3.2, to the extent that the holder of such Claim has not previously been paid, as soon as practicable after the later of the Effective Date or the date the Claim becomes an Allowed Claim, such holder shall receive from the Reorganized Debtors on account of such Claim cash equal to the Allowed amount of such Claim together with interest at the rate provided under § 511 of the Bankruptcy Code.

3.1.3    With respect to fees of the US Trustee described in Section 2.3.3, to the extent, if any, that such fees have become due prior to the Confirmation Date and have not previously been paid, then such fees shall be paid pursuant to 11 U.S.C. § 1129(a)(12) and 28 U.S.C. § 1930.  Any such fees relating to the period from and after the Confirmation Date shall be paid by the Reorganized Debtor pursuant to 28 U.S.C. § 1930.

3.2.    ***Classified Claims and Interests.***

3.2.1    *Class 1A (Sonoma County Secured Claims)*:  The Class 1A Claims are impaired.  If Rabobank becomes subrogated to the holder of the Class 1A Claims pursuant to Section 3.2.1.5 below, (i) the Class 1A Claims will thereupon be deemed to be Allowed Secured Claims in the then outstanding amount thereof; and (ii) thereafter neither the Debtor, the Creditors Committee, nor any other Person may file an objection in the Case to any of the Class 1A Claims. In full and complete satisfaction, the holder of the Allowed Class 1A Claims shall receive payment in full as follows:

3.2.1.1    The holder of the Allowed Class 1A Claims shall receive deferred cash payments in an aggregate amount equal to the amount of its Allowed Secured Claims, plus interest at the rate required pursuant to § 511 of the Bankruptcy Code (including, for the avoidance of doubt, if Rabobank becomes subrogated to the holder of the Class 1A Claims pursuant to Section 3.2.1.5 below, interest at that rate thereafter).  Specifically, the holder of the

Allowed Class 1A Claims shall receive five annual payments each consisting of one-fifth of the principal amount of the Class 1A Claims, plus interest accrued through the date each such payment is paid, commencing on April 15, 2016. Each such payment shall be paid on or before the 15th day of April (by way of example, the second payment shall be paid on or before April 15, 2017, and the final payment on or before April 15, 2020).

            3.2.1.2    The Allowed Class 1A Claims shall accrue interest at the rate required pursuant to § 511 of the Code, from the petition date until such Claims are paid in full.

            3.2.1.3    The County of Sonoma shall retain any liens it holds as a matter of law that secure the Class 1A Claims; provided, however, that upon full satisfaction of the Allowed Secured Class 1A Claims, any liens held by the County of Sonoma that secure the Class 1A Claims shall be released and the Real Property shall be held free and clear of those liens; and provided, further, however, that if Rabobank becomes subrogated to the holder of the Class 1A Claims pursuant to Section 3.2.1.5 below, (i) those liens shall also be released and the Real Property shall be held free and clear of those liens; and (ii) simultaneously with that release, the Class 1A Claims shall become secured by the liens that secure the Debtor's obligations under the New Note and the other Restructured Credit Documents pursuant to Section 3.2.2.2 below and in the same order of priority that those liens of Rabobank previously had (for the avoidance of doubt, no junior lien on the Real Property or any other collateral that is subject or would become subject to those liens of Rabobank immediately prior to that subrogation will have or obtain any priority over those liens of Rabobank as to the Class 1A Claims or the Debtor's obligations under the New Note and the other Restructured Credit Documents on account of that subrogation).

            3.2.1.4    Upon a sale or refinance of any parcel of the Real Property by the Reorganized Debtor, so long as the County of Sonoma is the holder of the Class 1A Claims, the Class 1A Claims shall be released and discharged and the liens of the County of Sonoma securing the Class 1A Claims shall be released and reconveyed as to the sold parcel only, provided that the unpaid portion of the Allowed Class 1A Claims attributable to that parcel of the Real Property shall be paid to County of Sonoma at closing of the sale or refinance.

3.2.1.5    If Rabobank pays the Class 1A Claims then outstanding to the County of Sonoma in full, Rabobank shall become subrogated to the County of Sonoma with respect to the Class 1A Claims, and the Class 1A Claims will thereafter be treated as provided in the Restructured Credit Documents.

3.2.2    *Class 1B (Rabobank Secured Claim)*:  The Class 1B Claim is impaired. The Class 1B Claim is deemed hereby and acknowledged by the Debtor to be an Allowed Secured Claim in the amount of $11,750,000, and neither the Debtor, the Creditors Committee, nor any other Person may file an objection in the Case to the Class 1B Claim.  In full and complete satisfaction, the holder of the Allowed Class 1B Claim shall receive the following treatment:

3.2.2.1    The holder of the Class 1B Claim shall receive the New Credit Documents (which will, *inter alia*, amend and restate, as provided therein, certain of the Existing Credit Documents) and retain, to the extent provided in the New Credit Documents, the Existing Credit Documents in full satisfaction of the Class 1B Claim.  In evidence of all existing loans and other obligations under the Existing Credit Documents, as restructured pursuant to this Plan, the Debtor will issue the New Note, which shall include the following terms:

(a)    The New Note shall have an initial principal amount of $11,750,000.

(b)    The New Note shall have a five-year term, beginning January 1, 2016.  The maturity date for the New Note shall be December 31, 2020 (the "Maturity Date").

(c)    Interest shall accrue on the New Note, beginning on January 1, 2016, at the greater of: (i) LIBOR plus 3.5%; or (ii) 5%, subject to the additional provisions of the New Credit Documents with respect to interest.  Monthly Interest payments are due beginning on ~~January~~February 15, 2016, and continuing monthly thereafter on the 15th calendar day of each month through December 15, 2020; provided, however, that the Debtor will not be in default for failure timely to make a monthly interest payment if that payment is received by the end of the month in which it is due.

(d) In addition to the monthly interest payments described in Section 3.2.2.1(c), the Debtor shall make the following payments of principal by the date indicated, which shall be applied to the principal balance of the New Note: $150,000 due on December 15, 2016; $200,000 due on December 15, 2017; $400,000 due on December 15, 2018; and $550,000 due on December 15, 2019; provided, however, that the Debtor will not be in default for failure timely to make one of these principal payments if that payment is received by the end of the month in which it is due. All outstanding principal and all accrued but unpaid interest under the New Note, and all other obligations under the Restructured Credit Documents, shall be due and payable in full on the Maturity Date.

(e) In addition to the payments described above, the Debtor shall make additional annual principal payments, each in the amount of 20% of the amount, if any, by which the yearly sales of bottled and bulk wine for the preceding year as shown on the Debtor's year-end financial statements to be provided to Rabobank under the New Credit Documents exceed the projections set forth in the Debtor's Disclosure Statement in support of this Plan for that year (the "Sales Payment"). The first Sales Payment, if any, due under this Section 3.2.2.1(e) shall be due on June 15, 2017 (for any amount due for the 2016 calendar year), and further Sales Payments shall be due on June 15th of each succeeding year through June 15, 2020, for the preceding year; provided, however, that the Debtor will not be in default for failure timely to make one of these principal payments if that payment is received by the end of the month in which it is due.

(f) The New Credit Documents will contain, among other things, reporting covenants that are standard in this industry for a loan of this size, and shall include a requirement that the Debtor shall provide unaudited, CPA-compiled financial statements for each year (due by April 30th of the following year), internally prepared financial statements for each half-year (due by August 31st of that year), and copies of the Debtor's tax returns, all as more particularly provided in the Restructured Credit Documents. There shall not be any financial covenants in the Restructured Credit Documents. The Debtor shall employ a financial advisor acceptable to Rabobank throughout the term of the New Note. Bill Brinkman shall be the initial

such financial advisor.  Thereafter, the names of other proposed financial advisors to replace or succeed Mr. Brinkman shall be submitted to Rabobank in writing with a C.V. or other relevant background information.  Rabobank shall have ten business days to accept or reject the proposed financial advisor, and Rabobank shall not unreasonably withhold its consent under this Section 3.2.2.1(f) to such a replacement or successor.

3.2.2.2    The Debtor's obligations under the New Note and the other Restructured Credit Documents shall continue to be secured by all real and personal property collateral presently securing the Class 1B Claim, including the Real Property (and Rabobank shall retain its existing liens thereon), and will also be secured by all personal property collateral hereafter acquired by the Debtor of the same types as that existing personal property collateral, all as more particularly provided in the Restructured Credit Documents.

3.2.2.3    The Restructured Credit Documents shall provide that the following shall constitute a material event of default: (i) failure to make any required principal payment by the end of the month in which it is due; (ii) failure to make any required interest payment by the end of the month in which it is due; (iii) failure to pay the balance owed under the New Note and all other amounts owed under the Restructured Credit Documents on the Maturity Date; (iv) failure to make any required payment for secured real property taxes (either for payments due under the Plan to holders of Class 1A Claims or future payments for real property taxes) when due; (v) failure to cure within 14 days following receipt of notice of that default either (1) a default under the reporting covenants of the Restructured Credit Documents, or (2) a default under the requirement to retain a financial advisor as provided by the Restructure Credit Documents; and (vi) other defaults specifically delineated in the Restructured Credit Documents as material events of default, subject to any applicable cure period provided therein.

3.2.2.4    Upon the occurrence of a material event of default under the Restructured Credit Documents, a ~~Liquidating Trustee~~Plan Administrator shall be appointed on the request of Rabobank, provided that a ~~Liquidating Trustee~~Plan Administrator shall be appointed only on: (i) the occurrence of one of the events of default specified in section 3.2.2.3 above, or (ii) the occurrence of a material event of default that the Restructured Credit Documents specifically

provide will give rise to appointment of a ~~Liquidating Trustee.~~Plan Administrator.  In the event

that Rabobank requests appointment of a ~~Liquidating Trustee~~Plan Administrator, the only question

for determination by the Bankruptcy Court shall be whether such a material event of default has

occurred.  It shall be understood that this provision is an essential term of the Plan, and is material

to Rabobank's consent to the Plan.

(a)     In the event that a ~~Liquidating Trustee~~Plan Administrator is

appointed pursuant to the provisions of this Section 3.2.2.4, the ~~Liquidating Trustee~~Plan

Administrator shall take control of the ~~assets of the Reorganized Debtor~~Estate Assets, operate and

manage them (including the business of the winery), and conduct an orderly and expeditious sale

process, with a specific direction to maximize, to the extent reasonable in the circumstances, the

value of the Estate Assets for all parties, including equity, all pursuant to the ~~Liquidating Trust~~

~~Agreement.~~Plan Administrator Provisions and the Plan Administrator Order.  The ~~Debtor's~~

~~unsecured creditors and equity holders~~Plan Administrator shall be ~~expressly included as a~~

~~beneficiaries of the Liquidating Trust Agreement.~~ the representative of the Estate for all purposes,

including pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(b)     To the extent that the Case has been closed prior to any

material default triggering the right to appointment of a ~~Liquidating Trustee~~Plan Administrator,

the Case may be reopened on the request of Rabobank for the purpose of requesting appointment

of a ~~Liquidating Trustee~~Plan Administrator pursuant to the provisions of this Section 3.2.2.4.  On

any such reopening of the Case for that purpose, all assets of the Reorganized Debtor, including (i)

all Causes of Action; and (ii) all assets of the Reorganized Debtor acquired or arising after the

Effective Date, will be deemed to be assets of the Estate as reopened.

(c)     To the extent that the ~~Liquidating Trust assets~~Estate Assets

have not been sold within two years following the date of appointment of the first ~~Liquidating~~

~~Trustee~~Plan Administrator, and in certain other circumstances as specified in the Restructured

Credit Documents, Rabobank shall have the right to foreclose and exercise its other rights and

remedies, pursuant to applicable state law, on and with respect to all Rabobank collateral under the

Restructured Credit Documents.

3.2.2.5    The Reorganized Debtor shall be entitled to make prepayments under the Restructured Credit Documents at any time and from time to time without penalty, on notice to Rabobank, and otherwise in accordance with the Restructured Credit Documents.

3.2.2.6    Upon payment in full of all obligations under the Restructured Credit Documents, any and all liens or security interests of the holder of the Class 1B Claim shall be released and all collateral shall be held by the Reorganized Debtor free and clear of such liens.

3.2.2.7    Rabobank, as the holder of the Class 1B Claim shall have the option, in its sole discretion, to pay in full the unpaid balance of the Class 1A Claims on behalf of the Reorganized Debtor, at any time until the Class 1A Claims are paid in full (the "Class 1A Option").  To the extent that Rabobank exercises its Class 1A Option, the Reorganized Debtor shall pay to Rabobank all amounts that would otherwise have been paid to the holder of the Class 1A Claims, on account of the Class 1A Claims, on the terms provided in Section 3.2.1, above.

3.2.2.8    On the Effective Date, all Causes of Action and all other rights, causes of action, claims for relief, defenses, and other entitlements held by the Debtor, the Estate, or the Reorganized Debtor against Rabobank are waived and released as provided in the Restructured Credit Documents.

3.2.2.9    The provisions of the Restructured Credit Documents shall control over the provisions of this Plan to the extent of any inconsistency between them.  The Restructured Credit Documents may be amended or modified as provided therein without amending or modifying this Plan.

3.2.3    *Class 1C (Other Secured Claims)*: Class 1C is impaired.  In full and complete satisfaction, the holders of the Allowed Class 1C Claims:

3.2.3.1    Shall retain their liens until paid in full;

3.2.3.2    Shall receive payment in full on or before ~~January 31, 2016~~thirty days following the Effective Date, with interest at a rate of 5% per year simple interest, accrued from the Confirmation Date, provided that any and all liens securing such Class 1C Claims shall be released and discharged upon the payment provided herein.

3.2.4    *Class 2 (Priority Unsecured Claims)*:  Class 2 is unimpaired.  To the extent

the holder of any Allowed Class 2 Claim has not previously been paid, then such holder shall receive from the Reorganized Debtor on account of such Claim cash equal to the Allowed amount of such Claim, paid on or as soon as practicable after the Effective Date.

3.2.5   *Class 3A (General Unsecured Claims)*:  Class 3A is impaired.  In full and complete satisfaction, the holders of the Allowed Class 3A Claims shall receive payment in full, as follows:

3.2.5.1    Not later than ~~January 31, 2016~~thirty days following the effective date, the Reorganized Debtor shall file with the Court a schedule identifying the Class 3A Claims that have been Allowed and the Class 3A Claims that are Disputed.  In its discretion, the Reorganized Debtor may, from time to time thereafter, update that schedule.

3.2.5.2    The holder of each Allowed Class 3A Claim shall receive eight equal quarterly payments which shall aggregate the amount of such Claim including interest, commencing on or before April 15, 2016, provided that the final payment shall include all accrued and unpaid interest and principal on account of such Claim as provided below.  Each such payment shall be paid on or before the 15th day after the end of the applicable quarter (by way of example, the second payment shall be paid on or before July 15, 2016).

3.2.5.3    Allowed Class 3A Claims shall accrue interest at the Unsecured Interest Rate, from the Petition Date until such Claims are paid in full.

3.2.6   *Class 3B (Manager Unsecured Claims)*:  Class 3B is impaired.  In full and complete satisfaction, the holders of the Allowed Class 3B Claims shall receive payment in full, as follows:

3.2.6.1    The holders of the Allowed Class 3B Claims shall receive payment of interest only on the Allowed amount of the Class 3B Claims, on a monthly basis from and after the Effective Date.  The holders of the Allowed Class 3B Claims shall receive payment of in full of the balance of the Allowed 3B Claims on or before January 31, 2021, provided that such payment shall be made only if the holder of the Class 1A Claim and the holder of the Class 1B Claim have, respectively, been paid in full on account of those Claims.  Each such interest payment shall be paid on or before the 31st day of each month, commencing on January 31, 2016,

000570891

18    AMENDED PLAN OF REORGANIZATION

1    provided that all other payments required under the Plan are current.

2              3.2.6.2    Allowed Class 3B Claims shall accrue interest at the Unsecured

3    Interest Rate, from the petition date until such Claims are paid in full.

4              3.2.6.3    In no event shall the holders of the Class 3B Claims receive any

5    payment unless all other payments required pursuant to this Plan are current.

6         3.2.7    *Class 4A (Defined Return Equity)*: Class 4A is impaired.  In full and

7    complete satisfaction of their Class 4A Interests, the holders thereof shall receive the following

8    treatment:

9              3.2.7.1    Each holder of a Class 4A Interest shall retain its Class-A Units

10   (as defined in the Operating Agreement).

11             3.2.7.2    All deferred payments due to holders of Class 4A Interests

12   pursuant to Section 3.3.4 of the Operating Agreement shall be converted to additional Class-A

13   Units at the value of $12,500 per Unit, rounded down to the nearest whole Unit.

14             3.2.7.3    The Operating Agreement shall be amended to provide that the

15   Class-A Units will no longer pay dividends, but will be entitled to a position of retirement superior

16   to the regular Units.

17                       (a)    Section 3.3.4 of the Operating Agreement shall be amended

18   to read as follows:

19         The Company, upon approval of a Supermajority of its Members
     may issue Class-A Units. Bridge loans outstanding as of July 30,
20   2008, from Members shall be converted to Class-A Units, as defined
     in section 2, "Definitions." Each Class-A Unit shall be valued at
21   $12,500. Conversion of bridge loan debt shall be based on the
     aggregate sum of the principal and unpaid interest accrued as of
22   June 30, 2008. At the option of the holding Member each Class-A
     Unit may be converted to Deerfield Ranch Winery LLC Units at a
23   rate of one for one, regardless of the offering price of the Unit of
     Membership when conversion is made. At the request of the holding
24   member, the Company will offer the Class-A Units of such Member
     for sale to other existing Members or potential investors in
25   preference to the regular Units held by existing Members, subject to
     the terms of Article 9, below (provided that the Company shall not
26   be required to offer such Member's units for sale in preference to
     new Units that may be sold by the Company). As stated in the
27   "Definitions", a Class-A Unit is a Preferred Unit of Membership that
     has a position of retirement superior to the regular Membership Unit
28   and otherwise has all the rights, obligations, limitations and

restrictions of "Units of Membership" also known as "Units".

(b)     The definition of "Class-A Unit" in Section 2 of the Operating Agreement shall be amended to read as follows:

"Class-A Unit" shall mean a Preferred Unit of Membership that has a position of retirement superior to the regular Membership Units and otherwise has all the rights, obligations, limitations and restrictions of "Units of Membership" also known as "Units".

3.2.8   *Class 4B (Equity)*: Class 4B is unimpaired.  Each holder of a Class 4B Interest shall retain its interest.

## ARTICLE IV
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1.    ***Assumption of Unexpired Leases and Executory Contracts.***  The following contracts shall be assumed as of the Effective Date, pursuant to § 365 of the Bankruptcy Code, by confirmation of this Plan.  Entry of the Confirmation Order shall constitute approval, pursuant to § 365(a) of the Bankruptcy Code, for the assumption of the executory contracts assumed pursuant to the provisions of this Section.

4.1.1   *Contracts to be assumed*:

4.1.1.1     The Operating Agreement shall be assumed, as modified by this Plan.

4.1.1.2     [Reserved]

4.1.1.3     [Reserved]

4.1.2   As to each of the above-listed contracts, the Debtor contends that no cure payment is required in order to assume the contract, unless otherwise stated above.  If a counter-party asserts that a cure amount is required, it must assert the right to a cure payment by filing a timely objection to confirmation of the Plan, or by filing a cure demand not later than the 15th day after Confirmation.

4.2.    ***Rejection of Contracts Not Expressly Assumed.***  Except as otherwise provided in this Plan or the Confirmation Order, any and all executory contracts or unexpired leases shall be deemed rejected as of the Effective Date.  Entry of the Confirmation Order shall constitute the

AMENDED PLAN OF REORGANIZATION

approval, pursuant to § 365(a) of the Bankruptcy Code, for the rejection of the executory contracts rejected pursuant to the provisions of this Section.

4.2.1 Any Claim associated with rejection of a contract pursuant to this Plan shall be Disallowed, unless it is (i) the subject of a proof of Claim filed within 30 days following the Confirmation Date and (ii) subsequently is Allowed.

/ / /

/ / /

/ / /

# ARTICLE V
# OTHER MATTERS REGARDING CLAIMS

5.1. **Single Claim.** Except as otherwise provided by this Plan, a Person that holds multiple Claims based on the same indebtedness or obligation, shall be deemed to have only one Allowed Claim against the Estate in an amount equal to the largest of all such similar Claims for the purposes of voting and distributions under the Plan.

5.2. **Unclaimed Distributions.** Distributions to holders of Allowed Claims will be sent to the last known address set forth on such holder's proof of Claim filed with the Court, or on the schedules, if no proof of Claim was timely filed. If a holder of an Allowed Claim cannot be located after a reasonably diligent effort, fails to deposit a distribution, or otherwise fails to accept a distribution within 90 days following the date of such distribution, then the distribution to such holder shall be canceled and there shall be no further distributions required with respect to such Claim.

5.3. **Objections to Claims.** Except as provided in Sections 3.2.1 and 3.2.2 above, any party in interest may object to any Claim or Interest treated herein by filing an objection with the Court and serving it upon the claimant and the Debtor no later than ten days before the first day set for the Confirmation Hearing. Except as provided in Sections 3.2.1 and 3.2.2 above, the Debtor and Reorganized Debtor may object to any Claim or Interest at any time. From and after the

Effective Date, the Reorganized Debtor may prosecute objections to Claims. A Claim or Interest shall be treated as disputed upon the filing of an objection to such Claim or Interest.

5.4. ***Treatment of Disputed Claims.*** No distribution shall be made on account of any Disputed Claim, unless and until it becomes an Allowed Claim. In the event that a Claim is Disputed at the time of a scheduled distribution under the Plan, the Reorganized Debtor shall maintain a reasonable reserve for such Disputed Claim.

5.5. ***Late-Filed Claims.*** Proofs of Claim that are not filed on or before the applicable Claims Bar Date shall receive no distribution under this Plan and shall be Dissallowed. The submission of a Ballot shall not constitute an amendable informal proof of Claim or an amendment to a previously filed proof of Claim or scheduled Claim. Any amendment to an otherwise timely filed proof of Claim must be filed on or before the Effective Date.

5.6. ***No Distribution to Disallowed Claims.*** Notwithstanding any provision herein to the contrary, no distribution shall be made on account of any Claim determined to be a Disallowed Claim.

5.7. ***Prepayment.*** Notwithstanding anything to the contrary, the Debtor may prepay all or any portion of a Claim or a note issued in payment of a Claim at any time without charge or penalty, including the Class 1A, Class 1B, and Class 1C Claims, and the New Note; provided, however, as to the Class 1B Claim and the New Note, the Debtor complies with the prepayment provisions of the Restructured Credit Documents.

5.8. ***Co-Obligor Claims.*** Efforts to collect upon Co-Obligor Claims shall be suspended for a period of 30 days past the deadline provided herein for payment of the Related Claim (the "Suspension Period").

5.8.1 Notwithstanding the foregoing, in the case of the Co-Obligor Claims against the Guarantors of the Class 1B Claim, the Suspension Period shall expire on the earlier of (i) the conclusion of a sale conducted ~~by a Liquidating Trustee~~of substantially all Estate Assets by a Plan Administrator pursuant to Section 3.2.2.4; (ii) two years from the date of appointment of ~~such Liquidating Trustee~~the first Plan Administrator; or (iii) the time otherwise provided by the New Credit Document to be executed by the Guarantors pursuant to the following sentence. The New

Credit Documents shall contain, *inter alia*, (i) a reaffirmation of the Guarantors' obligations (as those obligations may be modified by this Plan or the Restructured Credit Documents) under the existing guaranties of the Debtor's obligations to Rabobank as restructured pursuant to this Plan and the Restructured Credit Documents; (ii) a waiver by the Guarantors of defenses to those obligations of the Guarantors; (iii) a release and waiver of all rights, causes of action, claims for relief, and other entitlements held by the Guarantors against Rabobank; and (iv) a tolling agreement for the purpose of tolling any applicable statute of limitations during the Suspension Period, all as more particularly provided in the New Credit Documents, which New Credit Document containing those provisions the Guarantors shall execute.

5.8.2    During the Suspension Period applicable to a Co-Obligor Claim, the Court may exercise jurisdiction over that Co-Obligor Claim, and if that Co-Obligor Claim is commenced in any other court or jurisdiction, that Co-Obligor Claim may be removed to the Court.

5.8.3    The Court, and any other court permissibly exercising jurisdiction over a Co-Obligor Claim, shall order as follows:

5.8.3.1    If the Related Claim is a Disputed Claim, the Co-Obligor Claim shall be stayed until the Related Claim is Allowed or Disallowed.

5.8.3.2    If the Related Claim is an Allowed Claim, all proceedings against the Co-Obligor shall be suspended until the earlier of (i) the end of the Suspension Period applicable to the Co-Obligor Claim with respect to which that Related Claim relates; and (ii) the date on which that Related Claim is paid in full.  Upon payment of that Related Claim in full and termination of all other obligations and liabilities with respect thereto, that Co-Obligor Claim and any related proceeding shall be dismissed with prejudice.  Otherwise, the Court, and any other court permissibly exercising jurisdiction over that Co-Obligor Claim, shall conduct a Status Conference in the month prior to the end of the Suspension Period applicable to that Co-Obligor Claim at which it may grant such relief as may be just and equitable with respect to that Co-Obligor Claim.

5.8.3.3    If the Related Claim is a Disallowed Claim or a Discharged Claim, the Court shall dismiss that portion of the Co-Obligor Claim with respect to which that

Related Claim relates with prejudice, provided that:

            (a)     If the Court determines that it is legally impossible or inappropriate to dismiss that Co-Obligor Claim with prejudice, the Reorganized Debtor, in its unfettered discretion, may conditionally waive the Claims Bar Date to permit that Related Claim to be asserted against the Debtor, in which case the other provisions of Section 5.8.2 shall apply to that Co-Obligor Claim.

            (b)     If the Reorganized Debtor makes the foregoing election and the Creditor fails to assert that Related Claim against the Debtor, the Court shall dismiss that Co-Obligor Claim with prejudice.

            (c)     The Reorganized Debtor may make the election contemplated by this Section 5.8.3.3 and also pursue an appeal of the Court's determination that gave rise to the election. Upon entry of a Final Order reversing that determination and determining that it was permissible to discharge that Co-Obligor Claim with prejudice, that Co-Obligor Claim and that Related Claim shall thereupon forthwith be dismissed with prejudice, and the conditional election shall be given no further force or effect.

        5.8.4    Notwithstanding anything to the contrary contained in this Section 5.8, any applicable statute of limitations with respect to a Co-Obligor Claim shall be tolled during the Suspension Period applicable to that Co-Obligor Claim, except to the extent that such statute of limitations has already expired as of the Confirmation Date.

///

///

///

///

## ARTICLE VI
## MEANS FOR IMPLEMENTING THE PLAN

      6.1.    ***Plan Effectiveness.***  The Plan shall become fully effective and binding upon all parties on the Effective Date.

6.2. ***Revesting.***

    6.2.1   On the Confirmation Date, all cash on hand shall vest in the Reorganized Debtor, subject to the liens under the Restructured Credit Documents, and to the replacement liens of grape growers provided by prior order of the Court. Such cash may thereafter be used freely, in the Reorganized Debtor's discretion, but subject to the requirements of this Plan and the Restructured Credit Documents.

    6.2.2   On the Effective Date, the Real Property shall vest in the Reorganized Debtor, free and clear of all liens and encumbrances and all creditor claims, rights and entitlements whatsoever, excluding only (i) the liens held by the holder of the Class 1A Claims, and (ii) the lien held by the holder of the Class 1B Claim securing the obligations of the Reorganized Debtor under the Existing Credit Documents as restructured or amended and restated by the New Credit Documents.

    6.2.3   Notwithstanding anything to the contrary, on the Effective Date all property of the Estate shall vest fully in the Reorganized Debtor, free and clear of all liens and encumbrances and all creditor claims, rights, and entitlements of any kind, except as specifically provided herein (for the avoidance of doubt, the liens held by the holder of the Class 1B Claim securing the obligations of the Reorganized Debtor under the Existing Credit Documents as restructured or amended and restated by the New Credit Documents will continue).

    6.2.4   At any time after the Effective Date, subject to the Restructured Credit Documents, the Reorganized Debtor may (i) obtain credit in its unfettered discretion; or (ii) raise capital in the form of debt or equity.

6.3. ***Sale or Refinance.*** From and after the Effective Date and subject to the terms and conditions of the Restructured Credit Documents, the Reorganized Debtor may effect a

refinancing in full of the debt evidenced by the Restructured Credit Documents if the refinance complies with the Restructured Credit Documents and otherwise applicable law.

6.4. ***Preservation of Causes of Action.*** On the Effective Date, all rights, causes of action, claims for relief, and other entitlements held by the Estate or the Debtor, shall be deemed

fully vested in the Reorganized Debtor. Subject to Section 3.2.2.8 above, the Reorganized Debtor shall have all rights previously held by the Debtor to prosecute any such claims or causes. All such rights, causes of action, claims for relief, and other entitlements shall remain property of the Reorganized Debtor, and may be prosecuted or consensually resolved by the Reorganized Debtor in its reasonable discretion; provided, however, that all such claims and causes against Rabobank and certain related parties are released and waived pursuant to Section 3.2.2.8 above and the New Credit Documents.

6.5. ***Use of Funds.*** On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor shall fund the treatment of all non-classified Claims, and every other payment required to be made on the Effective Date or as soon as practicable thereafter, or otherwise when due under the Plan, subject to the terms, as applicable, of this Plan and the Restructured Credit Documents. Subject thereto, from and after the Effective Date, the Reorganized Debtor shall apply all cash on hand and all subsequently received revenues as follows:

6.5.1 First, to payments required in connection with the Allowed Class 1A, Class 1B, and Class 1C Claims, when due under the terms of the Plan, and to other amounts that become due and payable under the Restructured Credit Documents as the same become so due and payable.

6.5.2 Second, to payment of the Allowed Class 2 Claims, when due under the Plan.

6.5.3 Third, to payment of the Allowed Class 3A Claims, when due under the Plan.

6.5.4 Fourth, to the expenses of the operation of the Reorganized Debtor and its business, in the discretion of the management of the Reorganized Debtor, including the payment of compensation to professionals for post-Confirmation services.

6.5.5 Fifth, to payment of the Allowed Class 3B Claims, when due under the Plan.

6.6. ***De Minimis Distributions.*** If, pursuant to the Plan, the Reorganized Debtor would otherwise be required to make a distribution to any person of less than $100, the Reorganized

Debtor may choose to forego making such distribution and instead (a) add the amount to the next distribution to such person, or (b) if no further distribution to such claimant is otherwise required by the Plan, make no distribution to such person.

6.7. ***Bankruptcy Procedure and Transition.***

6.7.1 *Notice Required Post-Confirmation.* Except as otherwise specifically provided in this Plan, notice of matters that arise after the Confirmation Date, including fee applications, shall be given only to (a) the Reorganized Debtor; (b) the Office of the United States Trustee; (c) Rabobank; and (d) Persons who request notice of such matters through a written request that is filed with the Court and served on the Debtor not earlier than the Confirmation Date. Consistent with the Local Rules of the Court, no other form of service shall be required on parties receiving service through ECF.

6.7.2 *Post-Confirmation Motions.*

6.7.2.1 Except as otherwise specified herein, matters arising after the Confirmation Date and subject to the Court's retained jurisdiction may be initiated in the same manner and with the same effect as if the Case was pending before the Court and the Plan had not been confirmed. Except as provided in the Restructured Credit Documents, unless the Court orders otherwise, every Person party to such a matter shall bear its own attorneys' fees and costs in connection therewith.

6.7.2.2 The Reorganized Debtor may take such actions, including the initiation of proceedings or the prosecution of a motion, as may be reasonably necessary in order to interpret or enforce the terms, purposes, and intent of the Plan.

6.7.3 *Dissolution of the Committee.* The Creditors Committee shall be dissolved as of the Effective Date, or as soon thereafter as may be practicable.

6.7.4 *Post-Confirmation Professionals.*

6.7.4.1 From and after the Confirmation Date, the Reorganized Debtor may employ professional persons as it determines appropriate in its sole discretion, without the requirement for approval by the Court or any other party.

6.7.4.2 Professionals employed by the Reorganized Debtor may be paid

in the ordinary course, and need not submit fee applications with respect to services performed after the Confirmation Date.

6.7.5   *Administration of the Case.*  The Reorganized Debtor shall endeavor to conclude the administration of the case within a reasonable period of time.  After the Effective Date, the Reorganized Debtor shall evaluate, and if it determines appropriate, prosecute, subject to Sections 3.2.1 and 3.2.2 above, Causes of Action and objections to Claims.

6.7.6   *Quarterly Fees.* The Reorganized Debtor shall continue to pay quarterly fees to the US Trustee, pursuant to 28 U.S.C. § 1930(a)(6), until the Case  is closed.  Such fees shall be paid by the Reorganized Debtor at the rate in effect at the time the fees are due, and as soon as practicable after the fees are ordinarily due.

6.7.7   *Post-Confirmation Reports.*

6.7.7.1   Quarterly, following the end of each calendar quarter after entry of the Confirmation Order, the Debtor shall file a quarterly post-Confirmation status report, the purpose of which is to explain the progress made toward completing all steps necessary for entry of a Final Decree.  The quarterly reports shall be filed following the end of the applicable calendar quarter, within the time ordinarily required by the US Trustee.  The report shall include a statement of receipts and disbursements, with the ending cash balance, ending on the last day of a quarter, and shall be on the form provided by the US Trustee.  Quarterly reports must be filed every quarter that the Case is open, unless otherwise ordered by the Court.

6.7.7.2   A copy of each quarterly report shall be served upon the Persons as provided in Section 6.7.1, above.

6.7.8   *Final Decree.*  As soon as reasonably practicable, consistent with the provisions of this Plan and the Bankruptcy Code, including 11 U.S.C. § 350, the Reorganized Debtor shall file and serve an application for a Final Decree, together with a proposed Final Decree.

6.8.   ***Corporate Operations and Management.***

6.8.1   *Managing Members.*  The existing Managing Members of the Debtor shall be the Managing Members of the Reorganized Debtor.

6.8.1.1    Subject only to their duty to comply with the provisions of the Plan and otherwise applicable law, the Managing Members of the Reorganized Debtor are restored to their full corporate powers, pursuant to the terms of the Operating Agreement.

6.8.2    *Operating Agreement.*  The Operating Agreement, as modified by this Plan, shall remain in full force and effect, and shall be the operating agreement, pursuant to California law, of the Reorganized Debtor.

6.8.2.1    Section 3.1.1 of the Operating Agreement shall be amended to read as follows:

> 3.3.1  In the event that the Managers determine that additional capital is needed by the Company at any time during the term of the Business Plan, the Company may offer to sell additional Units to existing Members or new Members, in the Managers' sole discretion, provided, however, that the Managers may not accept Capital Contributions under this Section which, when aggregated with the Capital Contributions made pursuant to Section 3.2.3, exceed $20,000,000. The names and addresses of and number of Units purchased by the additional Members shall be set forth on Exhibit "A" hereto, as amended from time to time by the Managers to reflect the admission of additional Members. The company will offer to sell additional units for $15,000. The minimum investment shall be $150,000 (i.e. 10 Units). Units offered for sale at this stated price will be offered in the Phase 3.54.0 Private Placement Memorandum and subscription.

6.8.2.2    The terms of the Operating Agreement are hereby revised and modified as provided herein.  The Reorganized Debtor is authorized to revise the Operating Agreement document to reflect the modifications provided herein, but such modifications shall be effective regardless.

6.9.    **Other Actions.**  On and after the Effective Date, the Reorganized Debtor shall be authorized to take such actions as reasonably necessary to complete and effectuate the terms of this Plan, subject only to the specific limitations contained in this Plan, the Bankruptcy Code or Bankruptcy Rules, any order of the Court, and the Restructured Credit Documents.

6.10.    **Survival of Legal Claims.**  The Reorganized Debtor shall have the right, post-Confirmation, to pursue any and all Causes of Action that survive the revesting of assets contemplated by this Plan and the effectiveness of the New Credit Documents.

00057089-1

**ARTICLE VII**
**EFFECT OF CONFIRMATION**

7.1. ***Binding Effect of Confirmation.*** As of the Confirmation Date, the provisions of this Plan shall be binding on the Debtor, the Estate, all holders of Claims against or Interests in the Debtor, and all other Persons whether or not such Persons have accepted this Plan. The rights, benefits, and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, the executors, administrators, successors and assigns of each Person, whether or not they have accepted the Plan.

7.2. ***Discharge of Claims and Termination of Interests.*** Except as otherwise provided in the Plan or the Confirmation Order and to the maximum extent permitted by the Bankruptcy Code and any other applicable law:

7.2.1 Upon the occurrence of the Effective Date, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtor and Reorganized Debtor, as provided in §§ 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Reorganized Debtor at any time obtained to the extent that it relates to a Discharged Claim.

7.2.2 On the Effective Date, the Reorganized Debtor shall be deemed discharged and released from all Claims and Interests, including demands, liabilities, Claims and Interests that arose before the Effective Date and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of Claim or proof of Interest based on such debt or Interest is filed or deemed filed pursuant to § 501 of the Bankruptcy Code, (b) a Claim or Interest based on such debt or Interest is Allowed pursuant to § 502 of the Bankruptcy Code, (c) the holder of a Claim or Interest based on such debt or Interest has accepted the Plan, or (d) such Claim is listed in the Debtor's schedules of assets and liabilities.

7.2.3 As of the Effective Date all Persons (including governmental entities) shall be precluded from asserting against the Reorganized Debtor, its successors, or its assets any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. For the avoidance of doubt, this Section

30 AMENDED PLAN OF REORGANIZATION

7.2.3 shall not enjoin, release, or bar any claims against any non-debtor party.

7.3. **_Injunction._** Entry of the Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims discharged or modified pursuant to the Plan. Any act in violation of this injunction shall be void. The Reorganized Debtor shall be entitled to costs, including reasonable attorneys' fees and costs, for any action necessary to enforce this injunction. Notwithstanding anything to the contrary, the foregoing injunction shall not impede or impair enforcement of the terms of the Plan, including the exercise of rights under the Restructured Credit Documents by the holder of the Class 1B Claim or as subrogee to the Class 1A Claim if it becomes subrogated thereto as contemplated in this Plan and the Restructured Credit Documents.

7.4. **_Ratification._** Subject to all of the terms of this Plan, the Confirmation Order shall be deemed to ratify all transactions effectuated by the Debtor during the pendency of the Case to the extent occurring pursuant to an order of the Court.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.1. **_Exemption from Certain Transfer Taxes and Recording Fees._** Pursuant to Bankruptcy Code § 1146(c), the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

8.2. **_Grace Period._** Except with respect to the Class 1A Claim and the Class 1B Claim or any payment to be made under the Restructured Credit Documents, any payment to be made under this Plan shall be deemed timely made if it is mailed to the recipient's last known address within 10 calendar days following the date described in this Plan.

8.3. **_Governing Law._** Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and the Bankruptcy Rules, the laws of the State of California (without reference to its conflict of law rules) will govern the construction and implementation of the Plan and any agreement, documents, and instruments executed in connection with the Plan

unless otherwise specifically provided in such agreements, documents, or instruments.

8.4. *Integration.* The provisions of this Plan and the Confirmation Order (including, as to the Class 1B Claim, the Restructured Credit Documents) shall supersede any and all prior agreements, documents, understandings, written or otherwise, in respect of any Claim, and the treatment or satisfaction thereof, except as provided in any order of the Court. All such prior agreements, documents or understandings are merged herein, and no Person may thereafter pursue or prosecute any Claim or demand arising out of or pertaining to such superseded agreements, documents or understandings as against the Debtor or Reorganized Debtor.

8.5. *Section Headings.* Headings are used in the Plan for convenience and reference only, and shall not affect in any way the meaning or interpretation of the Plan or constitute a part of the Plan for any other purpose.

8.6. *Severability.* If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

9.1. *Retention of Jurisdiction.* The Bankruptcy Court shall retain and have jurisdiction over the Case for all purposes provided by the Bankruptcy Code, including for the following purposes:

9.1.1 To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending on the Effective Date and not otherwise determined by Confirmation, and the allowance of Claims resulting therefrom.

9.1.2 To determine any and all objections to the allowance of Claims and to allow, disallow, estimate, liquidate or determine any Claim.

9.1.3 To determine any and all motions for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan which accrued on or prior to the Confirmation Date.

9.1.4 To determine any and all applications, adversary proceedings and contested

or litigated matters (a) that may be pending on the Effective Date, except as provided in the Confirmation Order, or (b) which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court.

9.1.5    To consider any modifications of the Plan, any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code.

9.1.6    To implement the provisions of the Plan and to issue orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code.

9.1.7    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan.

9.1.8    To enter a Final Decree and orders reopening the Case as appropriate; provided, however, that interpretation, implementation, or enforcement of the Restructured Credit Documents, except to the extent expressly provided for in this Plan, are not matters required to be heard and determined by the Bankruptcy Court under this Section 9.1.

9.2.    *No New Case.* Notwithstanding the entry of a Final Decree, (i) the Debtor may not commence a new case under the Bankruptcy Code during the term of this Plan, but, in respect of any further relief under the Bankruptcy Code desired by the Debtor after entry of a Final Decree, may only reopen this Case; and (ii) the commencement by the Debtor of any such new case during the term of this Plan will be deemed to be a reopening of the Case and not such a new case.

///

///

///

///

///

# ARTICLE X
# MODIFICATION OF THE PLAN

10.1.    *Modification.* Pursuant to the provisions of § 1127 of the Bankruptcy Code, the

Case: 15-10150    Doc# 209-1    Filed: 02/22/16    Entered: 02/22/16 12:42:52    Page 37 of 39
AMENDED PLAN OF REORGANIZATION

Debtor reserves the right to modify or alter the provisions of the Plan at any time prior or subsequent to Confirmation.

10.2. ***Correction of Defects.*** Following the Effective Date, the Reorganized Debtor may initiate a proceeding or motion in the Court in order to remedy any defects or omissions, or to reconcile any inconsistencies, in the Plan or the Confirmation Order, upon no less than 21 days' notice of such proceedings or motion served on all parties provided in Section 6.7.1, or upon such parties as authorized by the Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**ARTICLE XI**
**REQUEST FOR CONFIRMATION**

11.1. ***Confirmation Pursuant to § 1129(b).*** If necessary, the Debtor requests Confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code.

DATED: ~~November 10, 2015~~February 22, 2016          DEERFIELD RANCH WINERY LLC.

By: ___*/s/ Robert W. Rex*_____
                Robert W. Rex
                Responsible Individual
                Managing Member

Presented by:
McNUTT LAW GROUP, LLP

By: ___*/s/ Shane J. Moses*_____
                Shane J. Moses

1      Counsel for the Debtor

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00057089-1                            35     AMENDED PLAN OF REORGANIZATION