# EXHIBIT 1

# PLAN ADMINISTRATOR PROVISIONS

# PLAN ADMINISTRATOR PROVISIONS OF
# AMENDED PLAN OF REORGANIZATION DATED FEBRUARY 22, 2016

These Plan Administrator Provisions document certain terms of the AMENDED PLAN OF REORGANIZATION DATED FEBRUARY 22, 2016 (the "Plan"), and are incorporated into the Plan by reference. Except with respect to the terms otherwise defined herein, capitalized terms contained herein shall have the meanings ascribed to them in the Plan.

1. <u>Effectiveness</u>. These Plan Administrator Provisions are effective only on entry of a Plan Administrator Order pursuant to Section 3.2.2.4 of the Plan, and shall be of no force or effect unless and until a Plan Administrator Order is entered by the Bankruptcy Court.

2. <u>Marketing and Sale of the Winery</u>. The Plan Administrator shall take control of the Estate Assets, preserve, protect, operate, and manage them (including operating and managing the winery business) as is reasonably necessary for the purpose of maintaining the going concern value thereof while conducting an orderly and expeditious sale of the Estate Assets reasonably calculated to maximize the sale price thereof. Pursuant to the Plan, the Plan Administrator is directed to maximize, to the extent reasonable in the circumstances, the value of the Estate Assets for all parties, including Rabobank, the other holders of Allowed Claims, and the holders of Allowed Interests. The Plan Administrator shall use his or her best efforts to sell the winery business expeditiously, and in any event before the expiration of two years from the appointment of the first Plan Administrator.

3. <u>Powers of the Plan Administrator</u>.

    3.1 <u>In General</u>. The Plan Administrator shall have all rights and powers of an appointed trustee in a Chapter 11 case; shall be a "representative of the estate" for the purposes of Bankruptcy Code section 1123(b)(3)(B); and shall retain and may enforce any Cause of Action (whenever arising) that the Reorganized Debtor or the Estate may hold against any person. In addition, the Plan Administrator shall have all rights and powers of the Reorganized Debtor described in the Plan, all rights and powers set forth herein, and all such other rights and powers reasonably incidental thereto, but shall exercise those rights and powers (i) under the supervision of and subject to the jurisdiction of the Bankruptcy Court; and (ii) subject to the Plan. Subject to Bankruptcy Court approval, the Plan Administrator shall have any and all other rights and powers as may be reasonably necessary, appropriate, or convenient to carry out and implement the terms of the Plan.

    3.2 <u>Operation of Assets</u>. The Plan Administrator may, without further order of the Bankruptcy Court, operate the Estate Assets, specifically including operating the winery business, as the Plan Administrator may determine is reasonably necessary to maximize or maintain the going concern value of the Estate Assets and generate cash to pay the expenses of administration pending the orderly and expeditious sale thereof; provided, however, for the avoidance of doubt, that the Plan Administrator is not required to continue at any time to operate the Estate Assets (including the winery business), in whole or in part, if continued operation of some or all thereof is not reasonably necessary to maintain or maximize the going concern value thereof or the value of the Estate Assets may decline as a result of continued operations.

4. <u>Liquidation of Estate Assets</u>. The Plan Administrator is charged with liquidating the Estate Assets in an orderly, expeditious, and commercially reasonable manner, within a reasonable time frame, but in no event later than two years from the date of the appointment of the first Plan Administrator. The Estate Assets shall be liquidated by the Plan Administrator in a manner reasonably intended to result in maximum realized value. The Plan Administrator shall be vested with and may exercise the powers of a Chapter 11 trustee under Bankruptcy Code § 363 for the benefit of the Estate, except as may be expressly limited by or pursuant to the Plan. Sale of Estate Assets by the Plan Administrator shall be subject to approval of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court.

5. <u>Use of Funds</u>. Funds of the Estate, including proceeds of liquidation of the Estate Assets, shall be used by the Plan Administrator consistent with Section 6.5 of the Plan, except as follows:

    5.1    No payments may be made to the holders of Unsecured Claims or Interests until all amounts due to Rabobank under the Restructured Credit Documents have been paid in full.

    5.2    Prior to payment of any amounts to holders of Allowed Unsecured Claims or Allowed Interests, the Plan Administrator shall make reasonable reserves for payment of the Plan Administrator's costs of administration of the Estate Assets, including (i) costs of preserving, protecting, operating, and managing the Estate Assets (including the winery business) in order to maintain and maximize the going concern value thereof as provided herein, and (ii) compensation of the Plan Administrator and professionals retained by the Plan Administrator in accordance herewith.

    5.3    No distinction shall be made between the holders of the Class 3A and Class 3B claims with regard to distributions by the Plan Administrator, and the Class 3B Claims shall be treated in the same manner as the Class 3A Claims.

6. <u>Other Responsibilities of the Plan Administrator</u>. Except to the extent specifically modified herein, or as otherwise ordered by the Bankruptcy Court, the Plan Administrator shall comply with all requirements and responsibilities of the Reorganized Debtor under and pursuant to the Plan. Without limiting the generality of the foregoing, these shall include:

    6.1    Payment of quarterly fees, as provided in Section 6.7.6 of the Plan, pursuant to 28 U.S.C. § 1930(a), until the reopened Case is closed.

    6.2    Filing of the post-confirmation reports described in Section 6.7.7 of the Plan.

    6.3    Compliance with all reporting requirements to and inspection and appraisal rights of Rabobank pursuant to the Restructured Loan Documents.

    6.4    Payment as and when the same become payable under the Plan of amounts due the holder of the Class 1A Claims.

6.5     Payment prior to the delinquency thereof of all secured real property taxes, assessments, and the like with respect to the Real Property that are not Class 1A Claims.

6.6     Payment to Rabobank on a monthly basis on the 15th day of each month of all accrued but unpaid interest on the principal balance of the New Note from time to time outstanding at the interest rate or rates from time to time in effect thereunder.

7.     <u>Additional Management and Control Provisions</u>. Notwithstanding and contrary provision in the Operating Agreement or applicable state law, the Plan Administrator shall have the sole and exclusive right to exercise the powers of the Reorganized Debtor and to manage and control the affairs of the Reorganized Debtor, whether such rights would otherwise be held by one or more of the members or the Managing Members of the Reorganized Debtor under the Operating Agreement or otherwise applicable law. Without limiting the generality of the foregoing, and notwithstanding and other provision of the Operating Agreement or other applicable non-bankruptcy law, subject to the supervision and jurisdiction of the Bankruptcy Court:

7.1     The Plan Administrator shall be the Manager (as defined in the Operating Agreement) of the Reorganized Debtor for all purposes under the Operating Agreement and applicable non-bankruptcy law.

7.2     No additional Members (as defined in the Operating Agreement) may be admitted to the Reorganized Debtor without the express written consent of the Plan Administrator.

7.3     No holder of an Interest may assign, convey, sell, encumber, or in any way alienate all or any part of his or her Interest without the prior written consent of the Plan Administrator.

7.4     The power to alter, amend, or repeal the Operating Agreement is vested exclusively in the Plan Administrator; provided, however, that the Operating Agreement may not be amended to admit additional Members without approval of the Bankruptcy Court, after notice and a hearing.

7.5     The Members of the Reorganized Debtor shall have no right or power to remove the Plan Administrator as the Manager of the Reorganized Debtor.

7.6     No Managing Member or other manager, nor any other person, other than the Plan Administrator, shall have the power to execute documents and instruments for the acquisition, mortgage, or disposal of property on behalf of the Reorganized Debtor, such power being vested solely in the Plan Administrator.

7.7     The provisions of Articles 4 and 5 of the Operating Agreement shall be deemed amended to provide that the actions provided for therein, including Members' calls for meetings, Members' votes, and actions by consent, shall apply only to such actions performed by the Plan Administrator, who shall be solely vested with the right and power to do, or omit doing, such things.

7.8     Article 12 of the Operating Agreement (pertaining to dissolution and winding up of the Reorganized Debtor) shall be deemed deleted from the Operating Agreement. Without limiting the generality of the foregoing, only the Plan Administrator shall have the power to dissolve or wind-up the Reorganized Debtor, and the death, incapacity, bankruptcy, retirement, resignation, or expulsion of any holder of an interest, whether occurring before, on, or after the date of the Plan Administrator Order, shall not cause, effect, or constitute a dissolution or winding up of the Reorganized Debtor.

7.9     No Person other than the Plan Administrator shall have the right or power to file any forms on behalf of the Reorganized Debtor with any federal, state, or local taxing authority. In addition to and without limiting the generality of the foregoing, no Person other than the Plan Administrator shall have the power to make and election regarding the status of the Reorganized Debtor for tax purposes. All tax attributes shall continue to be attributed to the holders of Interests, and the Reorganized Debtor shall remain for all state and federal tax purposes a disregarded "pass-through" entity and the Plan Administrator may not elect to have the Reorganized Debtor taxed as anything other than a disregarded "pass-through" entity without the approval of the Bankruptcy Court following a noticed motion.

7.10    The Operating Agreement shall be deemed to include provisions limiting the liability of the Plan Administrator to the extent provided in Section 14 of these Plan Administrator Provisions.

8.      <u>Corporate Purpose and Operating Agreement Modified</u>. Article 1.6 of the Operating Agreement shall be deemed amended to provide that the purpose of the Reorganized Debtor is to operate and sell the assets of the Reorganized Debtor and to use the proceeds of such operations and sales to pay Rabobank and the Claims of Creditors, and to distribute any remaining proceeds to the holders of Interests, all in accordance with the terms of these Plan Administrator Provisions, the Plan, and the Restructured Credit Documents. To the extent that any provision of the Operating Agreement is inconsistent with these Plan Administrator Provisions, these Plan Administrator Provisions shall govern, and the Operating Agreement shall be deemed amended to be consistent with these Plan Administrator Provisions.

9.      <u>Authorization for Additional Acts</u>. The Plan Administrator may take such actions as are necessary or appropriate to obtain or continue governmental recognition of the Plan Administrator's powers of management and control over the Reorganized Debtor and the Estate, including the preparation and filing of forms, certificates, and the like with the federal government and agencies thereof, and with the State of California and subdivisions or agencies thereof, including the California Secretary of State. The Plan Administrator may perform all other actions that are necessary or appropriate to effectuate and exercise powers of management and control over the Reorganized Debtor, including the execution of documents on behalf of the Reorganized Debtor in the Plan Administrator's capacity as the sole Manager of the Reorganized Debtor, including the execution of conveyancing instruments for the sale or other disposition of the real and personal property of the Reorganized Debtor, such as deeds and bills of sale.

10.     <u>Further Authorization</u>. So long as not inconsistent with the terms of the Plan, these Plan Administrator Provisions, or the Restructured Credit Documents, the Plan Administrator shall be entitled to seek such Bankruptcy Court orders and instructions as the Plan

Administrator deems necessary to carry out and further the intentions and purposes of, and to give full effect to, the provisions of the Plan (including these Plan Administrator Provisions).

11. <u>Appointment of the Plan Administrator</u>. In any motion by Rabobank for the Plan Administrator Order, Rabobank shall nominate the Plan Administrator; provided, however, that (i) in addition to having the right as provided in the Loan Restructuring and Amended and Restated Credit Agreement dated as of January 1, 2016, between the Reorganized Debtor, the Guarantors, and Rabobank, which is one of the New Credit Documents (that agreement, the "Restructuring Agreement"), to raise an objection or defense to that motion that any event or occurrence on which that motion is based that is not deemed by the Restructuring Agreement to be material was not, in fact, material, the Reorganized Debtor may also object (as also provided in the Restructuring Agreement) to the suitability of Rabobank's nominee for Plan Administrator and, in conjunction therewith, propose an alternative nominatee for Plan Administrator; and (ii) the appointment of any nominee for Plan Administrator is subject to approval by the Bankruptcy Court.

11.1 <u>Resignation</u>. The Plan Administrator may resign by giving not less than sixty (60) days' prior written notice of the proposed effective date of resignation to Rabobank and the Managers of the Reorganized Debtor immediately prior to the appointment of the first Plan Administrator (the "Prior Managers") and filing of such notice with the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator shall continue to serve as the Plan Administrator after notice of resignation until the date that appointment of a successor Plan Administrator becomes effective. Nothing in this Section 11.1 shall restrict the right of removal of the Plan Administrator as provided in Section 11.2 hereof.

11.2 <u>Removal</u>. The Plan Administrator may be removed for cause by order of the Bankruptcy Court. Such removal shall become effective on the date the appointment of the successor Plan Administrator becomes effective, or such other date ordered by the Bankruptcy Court. "Cause" means (i) fraud, willful misconduct, or gross negligence in performance if his or her duties; (ii) such physical or mental disability as substantially prevents the Plan Administrator from performing his duties as Plan Administrator hereunder; (iii) breach of a fiduciary duty or an unresolved conflict of interest; or (iv) failure expeditiously to carry out the duties of the Plan Administrator provided hereunder.

12. <u>Replacement</u>. If the Plan Administrator resigns or is removed, Rabobank shall promptly nominate a successor Plan Administrator; provided, however, that (i) the Prior Managers may object to the suitability of Rabobank's nominee for successor Plan Administrator and, in conjunction therewith, propose an alternative nominee for successor Plan Administrator; and (ii) the appointment of any nominee for successor Plan Administrator is subject to approval by the Bankruptcy Court.

13. <u>Retention of Professionals by the Plan Administrator; Compensation of the Plan Administrator</u>.

13.1 <u>Retention of Professionals</u>. The Plan Administrator shall be entitled to employ and retain such professionals as he or she deems appropriate, provided that employment

is approved by the Bankruptcy Court following an application filed pursuant to §§ 327, *et seq.,* of the Bankruptcy Code.

13.2    Compensation of the Administrator. The Plan Administrator shall be entitled to compensation at a reasonable hourly rate, in accordance with his or her customary hourly rates and subject to approval by the Bankruptcy Court, for time reasonably incurred in performing his or her duties pursuant to the Plan, from and after the date of his or her appointment, subject to review and payment as provided in Section 13.3, below. The Plan Administrator shall also be entitled to reimbursement for reasonable and necessary expenses of administration.

13.3    Payment of Compensation. Payment of compensation to the Plan Administrator or Retained Professionals for fees and expenses incurred from and after the Confirmation Date shall be as follows: The Plan Administrator shall pay compensation and expense reimbursements requested by Retained Professionals and the Administrator on an interim basis only after 21 days' notice by the requesting party, which notice shall be filed with the Bankruptcy Court and mailed to Rabobank, the Plan Administrator, the Prior Managers, and the United States Trustee. Such notice shall consist of a cover-page notice setting forth the amount requested, and shall attach the supporting billing records. If no objection is filed with the Bankruptcy Court by a party-in-interest, the Plan Administrator, or the United States Trustee within 21 days, the Plan Administrator may pay the compensation requested, but only to the extent that the Plan Administrator determines, in his or her sole discretion, that there are sufficient funds in the Estate. If a written objection is filed with the Bankruptcy Court, any compensation or expense reimbursement objected to may be paid only pursuant to an order of the Bankruptcy Court following notice and a hearing. If no written objection is filed within 21 days, no further review or approval shall be required.

14.    Limitation of Liability. Pursuant to California Corporations Code § 17005(d), any duty, including fiduciary duties, by the Operating Agreement or applicable law on the Plan Administrator is hereby modified to provide that the Plan Administrator shall not incur any liability to the Reorganized Debtor, holders of Interests in the Reorganized Debtor, or any party in interest in the Case, arising out of or relating to the Plan Administrator's management, supervision, or oversight of the Reorganized Debtor, except as a result of the Plan Administrator's fraud, intention misconduct, or gross negligence. In acting as Plan Administrator, the Plan Administrator shall be acting as an officer of the Bankruptcy Court, and, as such, shall enjoy qualified immunity from personal liability to the same extent as a bankruptcy trustee.

15.    Retention of Jurisdiction. In addition to the provisions set forth in Article IX of the Plan, the Bankruptcy Court shall retain and have jurisdiction over the administration of the Estate and the Reorganized Debtor by the Plan Administrator in all respects.